**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SHANNON VOLLING, JULIE BANSER, and    )
APRIL SOULAK    )
    )
       Plaintiffs,    )
    )  No. 11 C 04920
       v.    )
    )  Judge John J. Tharp, Jr.
ANTIOCH RESCUE SQUAD and METRO    )
PARAMEDIC SERVICES, INC.,    )
    )
       Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sharon Volling, Julie Banser, and April Soulak allege that they were subjected to sexual harassment, sex discrimination, retaliation, and assault and battery at the hands of co-workers and supervisors while they worked for the Antioch Rescue Squad, a private, non-profit provider of emergency medical and ambulance services in the Village of Antioch, Illinois. The squad is jointly operated and staffed by the two defendants. In an earlier decision, with which the Court assumes the reader's familiarity, the Court dismissed the counts brought under 42 U.S.C. § 1983 with prejudice and their state-law counts, alleging negligent retention and supervision, without prejudice. In the Third Amended Complaint (Dkt. # 80), the plaintiffs re-plead their negligence counts and add counts of assault and battery; they also reprise their allegations of sexual harassment, sex discrimination, and retaliation under Title VII and the Illinois Human Rights Act ("IHRA"). Only plaintiff Banser brings claims against ARS, the other plaintiffs having satisfied their claims pursuant to an offer of judgment; with this distinction in mind, the Court will refer to the "plaintiffs" collectively throughout this decision. Each defendant now moves to dismiss the Third Amended Complaint; Metro furthers moves to strike what it claims

are inflammatory and irrelevant allegations. The motions are granted in part and denied in part for the reasons set forth below.

## DISCUSSION

A motion under Rule 12(b)(6) challenges a complaint's sufficiency to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint must set forth enough factual detail give the defendant fair notice of the claims and the grounds upon which they rest, and the allegations must add up to a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 545, 555-57, 570 (2007); *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013). For purposes of the motions to dismiss, "[a]ll well-pleaded allegations in the plaintiffs' complaint are accepted as true, and all reasonable inferences are drawn in their favor." *Navarro v. Neal*, 716 F.3d 425, 429 (7th Cir. 2013). The Court will not attempt to summarize the factual allegations in the 223-paragraph Third Amended Complaint, and instead will refer the plaintiffs' specific allegations as necessary to address the defendants' arguments.

## I.      State-Law Tort Claims

In Counts XIII(a) and XIII(b),[1] XIV, XV, the plaintiffs allege that the defendants were negligent because they knew of but failed to prevent or stop misconduct by their employees—including assault, battery, and harassment—that caused harm to the plaintiffs and others, and retained and failed to discipline the "unfit" employees after becoming aware of their misconduct. The defendants challenge the negligence counts on several grounds: lack of standing, preemption, timeliness, and (for lack of a better term) double-pleading. The Third Amended

---

[1] The Third Amended Complaint labels both negligent supervision counts (Banser's claim against ARS and all plaintiffs' claim against Metro) "Count XIII."

2

Complaint also adds state-law counts of assault and battery (Counts XVI-XVIII[2]) premised on the plaintiffs' allegations that the defendants' employees, including Kyle Shouse and Chris McBrady, grabbed, touched, groped, slapped, or otherwise offensively touched them, and placed them in reasonable fear of imminent offensive contact. The defendants move to dismiss these counts because, they argue: (1) they cannot be held vicariously liable for conduct outside of the scope of employment; and (2) the claims are preempted.

### A.     Pleading Requirements

Although the plaintiffs have divided their allegations into separate counts corresponding to various legal theories, and the defendants attack the complaint count by count, it bears noting at the outset that this common approach to litigating motions to dismiss tends to obscure the critical difference between "claims," which explain the plaintiff's grievance and demand relief, and "counts," which describe legal theories by which those facts purportedly give rise to liability and damages. *See NAACP v. American Family Mut. Ins. Co*., 978 F.2d 287, 292 (7th Cir. 1992). Pleading in counts, although common and frequently helpful, is not required unless "doing so would promote clarity" as to "each claim *founded on a separate transaction or occurrence*." *See* F. R. Civ. P. 10(b) (emphasis added); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Indeed, it is axiomatic that a plaintiff is not required to plead legal theories, period. *See Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012) (hostile work environment claim pleaded where complaint never used that term). Nothing in *Twombly* or *Iqbal* changes that tenet: those cases "do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories." *Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010);

---

[2] The actual complaint labels two counts "XVII"; the Court will rename the battery count by plaintiff Banser against ARS Count XVII(b).

*Alioto*, 651 F.3d at 721 ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery.").

That is why a motion to dismiss should be filed (and granted) when the facts in the plaintiff's complaint, taken as true, do not state a plausible claim under *any* "recognized legal theory." *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012). That is true whether or not the plaintiff includes her theories of relief in the complaint; because plaintiffs are not required to do so, it follows that specifying an incorrect theory is not fatal. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). "Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules." *NAACP*, 978 F.3d at 292.

The import of all this is that "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *Id*. And in this case, when it comes to various state-law "claims" that the defendants seek to vanquish in their motions to dismiss, the Court notes that these "claims" are all premised on the same core set of facts, as evidenced by the integration of all of the factual allegations into every count of the complaint. Thus, although it is true that a count based on a negligence *theory* is barred if preempted, as the defendants argue here, that does not mean that the facts on which that theory of liability is based fail to state a claim upon which relief can be granted. If there is another theory under which the same set of facts would entitle the plaintiff to relief, then dismissal of the complaint is improper. That is why attacking "counts" as if they were "claims" may confuse, rather than clarify; as here, litigants often devote substantial resources to disposing of putative "claims" which, at the motion to dismiss stage, are little more than non-dispositive labels subject to change as allegations yield to evidence over the course of discovery.

The Court previously ruled that Section 1983 did not provide a viable theory of relief because the defendants could not be considered state actors, but that Title VII and the IHRA provides a plausible theory of liability for sex discrimination, sexual harassment, and/or retaliation, based on essentially the same facts. The Court further held that the IHRA preempted the common-law claims to the extent they overlapped with the statutory claims, but left open the possibility that other types of misconduct (*i.e.,* non-gender-based) might provide a plausible basis for liability in tort. The tort theories the plaintiffs have advanced in the Third Amended Complaint are the focus of the defendants' present motions. Although, as will be seen, plaintiffs' negligence theories are not viable as to plaintiff Volling, the conduct on which those claims are based remains a plausible source of liability. Ultimately, in reviewing the defendants' motion to dismiss, the critical question is whether the plaintiffs have stated a plausible claim for relief under some recognized legal theory, not whether they have properly labeled that theory.

## B.     Standing

Both defendants argue that the plaintiffs lack Article III and prudential standing to bring the negligence "claims." But, as just noted, it is not clear that the plaintiffs have "claims" for negligence that are separate from other tort "claims": the negligence counts are premised on the same factual scenario that underlies the counts for assault and battery. The plaintiffs allege that the two defendants are directly liable for failing to take action to prevent or remedy the systemic physical and verbal harassment, abuse, and mistreatment they suffered at the hands of their co-workers and supervisors. Whether that "claim" is properly labeled negligent supervision, negligent retention, assault, battery, or some other species of tort, is not—at this stage of the proceedings, anyway—dispositive of the defendants' potential liability, and it is therefore incongruent for the defendants to argue that the plaintiffs lack standing solely as to the

negligence "claims" but not the others that are premised on the same set of facts.[3] The court's standing analysis therefore applies not only to the negligence "claims" but to any others premised on the same facts.

Article III standing is a requirement for federal jurisdiction, and it requires the plaintiff to demonstrate "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984); *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012). The injury-in-fact requirement, which the defendants assert cannot be met here, requires the plaintiffs to have an injury that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Allen*, 468 U.S. at 751. Prudential standing limits a court's exercise of its jurisdiction in cases where, for example, "the harm alleged in the complaint is a generalized one shared in substantially equal part by a large class of citizens" and where the plaintiffs "rest their claims to relief on the legal rights or interests of third parties." *G & S Holdings LLC*, 697 F.3d at 540-541; *see Warth v. Seldin*, 422 U.S. 490, 499 (1975).

The Court previously raised the issue of standing because it concluded that any state-law tort claims premised on the same facts underlying the sexual harassment claims are preempted by Title VII and the IHRA, which provide exclusive remedies for such misconduct. The Court questioned whether the plaintiffs had standing to bring claims premised on allegations that did not go to the preempted claims, because those allegations seemed to describe conduct that would be offensive or injurious to individuals other than the plaintiff, such as the allegedly abused

---

[3] For this, the Court takes some responsibility, as the issue of standing for the negligence "claims" was raised by the Court in its prior opinion, but that was before the Third Amended Complaint added new legal theories of assault and battery based on the same conduct.

patients, non-plaintiff co-workers, or even the general public. The Court allowed the plaintiffs the opportunity to re-plead and allege that they personally suffered an injury in fact for purposes of Article III standing, and that, for purposes of prudential standing, the injury was not one common to the public at large.

These shortcomings have been remedied in the Third Amended Complaint. The plaintiffs allege they personally were harmed by three broad categories of misconduct other than the sexual harassment on which their statutory claims are based:[4] "(1) harmful pranks involving misuse of pharmaceutical drugs and human feces; (2) mistreatment of patients and deviations from standards of care; and (3) misconduct causing a dangerous work environment." These categories euphemistically describe behavior that is far more graphically pleaded; for example, the "misuse of pharmaceutical drugs" presumably refers to putting laxatives in others' drinks, and "pranks involving . . . human feces" presumably refers to Mr. Shouse placing his feces in the women's bathroom and/or putting it on a spoon and chasing people with it. "Mistreatment of patients" includes alleged batteries such as hitting a psychiatric patient with a clipboard or exposing a patient's breasts unnecessarily. The "dangerous work environment" could describe such conduct as working with fellow paramedics who drove the ambulance while intoxicated or while sending text messages. The plaintiffs allege that they and others reported this conduct orally and then in writing, and that the squad's chief, deputy chief, and board members refused to take action, forced the plaintiffs to keep working with the offenders, and told the plaintiffs to keep quiet.

---

[4] The plaintiffs protest that it is improper to isolate the sexually harassing behavior and attendant injuries from the conduct underlying the tort claims, insisting that their complaint must be viewed as a whole. But here, the tort claims are preempted to the extent they mirror the sexual harassment claims. Therefore the court cannot consider injuries attributable to sexual harassment when determining whether there is standing to bring the negligence claims.

The plaintiffs plausibly allege that this misconduct harmed them personally. For example, the plaintiffs allege that their employers' acts or omissions caused them to suffer assaults and batteries at the hands of the employee-perpetrators. Third Am. Compl., Dkt # 80, ¶¶ 152(a), 164(a), 175(a), 187(a). They further allege that defendants' negligence allowed other employees to persist in conduct, such as that described above, that caused the plaintiffs "injury, emotional distress, severe embarrassment, pain, suffering, humiliation, fear, anxiety, damage and risk of damage to their careers and reputations, damage to their standing in the community, loss of enjoyment of life, inconvenience and other non-pecuniary losses." These harms are concrete and particularized; they are also plausible in light of the factual allegations.

Metro raises the question whether some of these injuries "count" for purposes of the standing analysis, to the extent they are purely emotional or reputational in nature. *See* Mem., Dkt. # 102 at 8. But Metro misreads the applicable law. Under Illinois law, negligence is actionable if it directly causes emotional distress even without any physical symptoms. *Corgan v. Muehling*, 574 N.E.2d 602, 608-09 (Ill. 1991) (abolishing requirement of physical manifestation of emotional distress). And a bystander need not allege any physical impact in order to state a claim for intentional infliction of emotional distress. *See Rickey v. Chicago Transit Authority,* 457 N.E.2d 1, 4 (Ill. 1983). The Illinois Appellate Court held that there is no physical injury required as an element the specific negligence theories pleaded here, in a case where the alleged injury was damage to reputation. *See Van Horne v. Muller*, 691 N.E.2d 74 (Ill. App. Ct. 1998) ("[W[e hold that complaints stating a cause of action for negligent or reckless hiring, supervision and retention need not allege physical injury."). The Illinois Supreme Court reversed the decision on other grounds on appeal, but recognized, and neither affirmed nor

criticized, the holding that no physical injury was required. *Van Horne v. Muller*, 705 N.E.2d 898, 905 (Ill. 1998).

It is possible to isolate certain factual allegations—such as the use of squad funding to purchase alcohol—and doubt they caused injury to these individual plaintiffs. That is the spirit of the defendants' arguments, but this approach is inconsistent with the requirements of notice pleading and with the default rule that the plaintiff is given the benefit of all reasonable inferences. *G & S Holdings LLC*, 697 F.3d at 539 (assessing motion to dismiss for lack of standing requires "accepting as true the facts alleged in the complaint and drawing reasonable inferences in favor of the plaintiff"). There is dubious value in parsing out "counts" at this stage of the proceeding and even less in attempting to parse out specific fact allegations that may, or may not, ultimately support one or more claims for relief. Viewing the complaint as a whole, the plaintiffs have plausibly alleged that the defendants' acts and omissions with respect to supervising and retaining, or not disciplining, the offending employees caused them to suffer physical and emotional injuries. Furthermore, the defendants' contention that the plaintiffs' claimed injuries are "conjectural or speculative" is puzzling; the plaintiffs have alleged injuries that already occurred, not ones that are anticipated or hypothetical. Whether plaintiffs can ultimately prove sufficiently definite damages for the injuries they claim is not relevant to the issue of whether have plausibly alleged an injury-in-fact for purposes of their standing. *See Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006) ("The injury must be to the sort of interest that the law protects when it is wrongfully invaded. The cases simply require litigants to possess such an interest, which is quite different from requiring them to establish a meritorious legal claim.").

## B. Preemption of Tort Theories

The defendants next argue that the plaintiffs' negligence, assault, and battery counts are all preempted by the Illinois Human Rights Act ("IHRA") and the Illinois Workers' Compensation Act ("IWCA").

### 1. IHRA Preemption

This Court has already ruled that—assuming the plaintiffs had standing—the IHRA did not preempt the plaintiffs' tort theories. The IHRA is the exclusive state remedy for sexual harassment, discrimination, and retaliation. *See* 775 ILCS 5/8-111. Thus, the statute preempts tort counts to the extent that they do not require proof of conduct that is also proscribed by the Act—claims that are "inextricably linked" to civil rights violations. *See Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill. 1997); *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273, 1278 (Ill. 1994). Therefore, in its prior ruling, this Court noted that the tort counts "plainly are preempted" "[t]o the extent that [they] are premised on the conduct that underlies the Title VII claims"—and the corresponding IHRA counts. That ruling stands, but it does not support the defendants' request for dismissal of the counts in their entirety. The Court went on to explain that the "negligent, unsafe, and even life-threatening conduct of defendants' employees" was "distinct from the allegations of offensive sexual remarks and conduct that support the sexual harassment and discrimination claims," and therefore the defendants were wrong to argue preemption based on purported similarity between the tort claims and the civil rights claims. That is even clearer now that the plaintiffs have further elucidated their allegations and the harms they allegedly suffered. Therefore, the IHRA does not wholly preempt the tort counts.

*2.    IWCA Preemption*

IWCA preemption is a closer issue, at least as to plaintiff Volling. As to the other plaintiffs, the Court concludes as a matter of law that they have no remedies as "employees" for purposes of the IWCA and therefore, their assertion of tort theories cannot be preempted by the provision of the statute making it the exclusive state-law remedy for workplace injuries. The parties did not distinguish between the individual plaintiffs in arguing for and against IWCA preemption, but Illinois law does. Illinois courts have held that the IWCA does not protect volunteers. *Board of Ed. of City of Chicago v. Industrial Commission*, 290 N.E.2d 247, 249-250 (Ill. 1972) ("the workmen's compensation statutes throughout this country have uniformly been construed to exclude from coverage purely gratuitous workers who neither receive, nor expect to receive, pay or other remuneration for their services"). This is consistent with the primary purpose of workers' compensation laws: to provide financial protection, including income replacement, for injured workers. *Id.* at 249. Because the IWCA does not protect volunteers such as Soulak and Banser, its exclusivity provision cannot preempt their ability to recover under a tort theory. Put differently, because their injuries are non-compensable under the IWCA, preemption does not apply.

Although they did not address the issue of whether the injuries of plaintiffs Soulak and Banser were compensable under the IWCA, such that they could be preempted, the plaintiffs raise a related question of whether for the defendants are estopped from raising the defense of IWCA preemption. They argue that the defendants "cannot bring dispositive motions based on defenses available only to employers while simultaneously asserting that they are not employers."

But the two positions are not necessarily inconsistent. Title VII and the IHRA are distinct statutes that serve different purposes and define the relationship between employees and employers differently. Title VII's remedial purpose—to make the workplace "an environment free of discrimination, where race [or gender] is not a barrier to opportunity," *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009)—is substantially broader than the IWCA's more limited purpose to provide financial protection, including income replacement, for injured workers, *Board of Ed. of City of Chicago*, 290 N.E.2d. at 249. And as noted in the Court's prior opinion, 2012 WL 6021553, at *8, in construing the meaning of the terms "employee" and "employer" under Title VII, the Supreme Court has instructed courts to use the common law principles of agency in light of the absence in the statute of a substantive definition of those terms. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323 (1992). No single factor, such as compensation, is dispositive of this common law question, *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52 (1989), whereas the Illinois Supreme Court has expressly limited the IWCA's scope to a limited set of workers—namely, those who are compensated financially. There is, therefore, nothing inherently inconsistent in recognizing that the reach of each statute differs notwithstanding their use of common descriptive labels such as "employee" and "employer." 2012 WL 6021553, *8 n.6.[5]

---

[5] Rather than address the foregoing, the defendants contend in their reply brief that their IWCA preemption argument is consistent—or not inherently inconsistent—with their position that they are not employers, because the IWCA preemption argument can be made by anyone, not just employers. The court is not convinced by this argument; the cases cited by the defendants do not go that far, and the statute itself explicitly blocks separate recovery by workers covered by the IWCA only as against "the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker." The defendants, to the extent they are not employers, would be attempting to vindicate some third party's rights with their preemption defense. Nor is the Court convinced by Metro's argument that it can avoid the potential inconsistency simply by taking all of plaintiff's allegations as true. As Metro previously argued, and this Court agreed,

Even if the defendants had taken an inconsistent position regarding their status as "employers," their preemption argument would not be foreclosed by judicial estoppel because they did not prevail in their argument that they are not the plaintiffs' employers; they are not pursuing an argument that is inconsistent with one they previously convinced a court to accept. *See In re Hovis,* 356 F.3d 820, 823 (7th Cir. 2004) ("One who argues a position in court, *and prevails*, rarely is entitled to switch ground and argue an inconsistent position later, even within the scope of a single proceeding."); *United States v. Newell*, 239 F.3d 917, 921 (7th Cir. 2001) (for judicial estoppel to apply, prior inconsistent argument must have been accepted by the court in some manner).

The only plaintiff who is possibly subject to IWCA preemption, then, is Volling, who is a paid employee of Metro. The IWCA is the exclusive state law remedy for accidental injuries sustained by an employee arising out of and in the course of her employment. *See* 820 ILCS 305/5, 305/11; *Meerbrey v .Marshall Field & Co*., 564 N.E.2d 1222, 1225-26 (Ill. 1990). "To escape the statutory bar, plaintiff would have to prove either that the injury (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment or (4) was noncompensable under the Act." *Collier v. Wagner Castings Co*., 408 N.E.2d 198, 202 (Ill. 1980). "Accidental" workplace injuries, moreover, include those intentionally inflicted by a co-worker because generally "such injuries are unexpected and unforeseeable from the injured employee's point of view," as well as from the employer's, "at least where the employer did not direct or expressly authorize the co-employee to commit the assault." *Meerbrey*, 564 N.E.2d at 1226. The defendants argue that the plaintiff cannot establish any exception to preemption, and so her tort claims must be dismissed. Volling, on the other

---

whether defendants are "employers" is a legal question, and legal conclusions pleaded in the complaint are not taken as true on a motion to dismiss.

hand, contends that her injuries are not "accidental" within the meaning of the statute because the defendants expressly authorized the conduct that caused the harm.

Under Illinois law, the IWCA's exclusivity provisions do not bar "a common law cause of action against an employer . . . for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Meerbrey*, 564 N.E.2d at 1226; *see McPherson v. City of Waukegan*, 379 F.3d 430, 442-443 (7th Cir. 2004) (In order to avoid preemption, [plaintiff] must establish that the [defendant] itself 'has committed, commanded, or expressly authorized' the torts against her."). This is because "the employer should not be permitted to assert that the injury was 'accidental,' . . . when he himself committed the act." *Id.*; *see Benitez v. Am. Standard Circuits, Inc.*, No. 08 C 1998, 2009 WL 742686 (N.D. Ill. 2009). Whether the employer expressly authorized the conduct is a fact issue. *See Toothman v. Hardee's Food Systems, Inc.*, 710 N.E. 2d 880, 884 (Ill. App. Ct. 1999) ("The decision in *Meerbrey* requires factual findings as to whether the employee's injuries were unexpected or unforeseeable from the injured employee's point of view and, if so, whether the intentional act was committed by the employer personally or by the alter ego of the employer . . . or whether the employer commanded or expressly authorized the intentional tort.")

Here, Volling's allegations are sufficient to plausibly allege that the defendants effectively authorized the offending employees' behavior by failing to take any corrective action after being repeatedly advised of the problems. The plaintiffs allege that they reported the misconduct, orally in in writing, to the chief, two deputy chiefs, and the board, to no avail, and further that the misconduct often occurred in full view of supervisors and board members; indeed, the plaintiffs allege that a board member and a supervisor perpetrated certain of the offensive acts they complain about. The plaintiffs further allege that when they reported

misconduct, they were rebuffed, told to keep their problems "in the squad," and were retaliated against. *See* Compl. ¶¶ 58-80.

If the plaintiffs' version of events is true—and for present purposes, it is assumed to be—ARS and Metro were uninterested in investigating their complaints or disciplining the offenders, and indeed tried to convince the plaintiffs not to pursue their grievances, which allowed the conduct to continue and escalate with the employers' knowledge and approval. This is enough, at least at the pleading stage, to allow the inference that the tortious conduct was "expressly authorized," and therefore, that the resultant injuries were not "accidental" under the IWCA. The knowing ratification of, and in some cases participation in, the injurious acts of plaintiffs' co-workers, would make the plaintiffs' injurious foreseeable from the employer's standpoint, and therefore, inconsistent with the definition of "accidental" set forth *Meerbrey*. *See* 564 N.E. 2d at 1226 ("management's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct"). *See also, e.g., Thomas v. Habitat Co*., 213 F. Supp. 2d 887, 892 (N.D. Ill. 2002); *Benitez,* 2009 WL 742686, at * 4-5 ("failing to stop known tortious conduct by its employees" was sufficient allegation that defendant "authorized" the behavior); *Cline v. General Elec. Capital Auto Lease, Inc.*, 757 F. Supp. 923, 931 (N.D. Ill 1991) ("Internal GECAL memos demonstrate that it not only was aware of Mr. Burd's mistreatment of his employees, it tolerated it, because Mr. Burd's department performed so well. That means that the battery was not 'accidental' within the meaning of the Illinois Workers' Compensation Act. GECAL 'authorized' Mr. Burd's battery of Ms. Cline by failing to prevent assaults it was reasonably aware he was committing."); *Handley v. Unarco Indus., Inc*. 463 N.E.2d 1011, 1023 (Ill. App. Ct. 1984) ("express authorization" sufficiently alleged where plaintiff alleged employer knew the dangers of asbestos and intended harm). *But see Santos v. The Boeing Co.*, No. 02 C 9310, 2004

WL 1384724 (N.D. Ill. May 11, 2004) (ratification does not establish "specific intent" to injure by employer). The Court therefore concludes that the pleadings raise a fact issue as to whether the conduct that injured Volling was expressly authorized by the employees, such that her injuries are not "accidental" within the meaning of the IWCA.[6] Therefore, as further noted in section C below, the Court cannot conclude as a matter of law that as to Volling that an intentional tort, or express authorization, theory is preempted. A theory grounded in mere negligence, however, appears to be inconsistent with the concept of express authorization and its purpose (to allow liability where the injury cannot justly be deemed "accidental"); therefore the negligent supervision and retention counts must be dismissed as to Volling because the negligence theories of recovery are preempted by the IWCA.

### C.    Vicarious Liability for Intentional Torts

Because the plaintiffs allege that ARS and Metro expressly authorized or directed the injurious conduct of the plaintiffs' co-workers—the Court rejects the argument that the assault and battery "claims" must be dismissed because the torts did not occur within the scope of employment.

Under the theory of *respondeat superior*, an employer can be liable for the torts of its employee when those torts are committed within the scope of the employment, and this vicarious liability extends to the negligent, willful, malicious or even criminal acts of its employees, when committed within the scope of employment. *Adames v. Sheahan*, 909 N.E.2d 742, 754-55 (Ill. 2009). Illinois courts look to the Restatement of Agency in determining whether actions are within the scope of employment. *See id*. at 755. An individual's conduct is within the scope of

---

[6] The plaintiffs also contend that the perpetrators were the alter ego of ARS and Metro; it is not necessary for the Court to consider this argument in light of its decision that the complaint contains sufficient allegations of express authorization to survive dismissal.

employment if it is "of the kind he is employed to perform"; it "occurs substantially within the authorized time and space limits; and it is "actuated, at least in part, by a purpose to serve the master." *Id*. (quoting Restatement (Second) of Agency § 228(b)). Accordingly, conduct is outside the scope of employment "if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id*.

As discussed, the IWCA preempts plaintiff Volling's negligence claims. But to the extent that she alleges "express authorization" on the part of ARS and Metro, the intentional tort theories remain viable and, if proved, could lead to *direct* liability for the employers. However, there is no path to vicarious liability as to plaintiff Volling; she is subject to IWCA preemption, and that statute "bar[s] employees from bringing common law actions against their employers based solely upon the doctrine of *respondeat superior*." *Meerbrey*, 564 N.E.2d at 1227 (citing *Collier*, 408 N.E.2d at 202-203). As to plaintiff Volling, therefore, a "scope of employment" argument is beside the point; to escape IWCA preemption, she already must prove direct rather than vicarious liability for the intentional torts.

That is not true for plaintiffs Banser and Soulak, however, so the defendants' argument that the misconduct that injured them was committed outside the scope of the perpetrators' employment is in play, though it is generally a fact issue not appropriate for resolution on summary judgment, let alone on a motion to dismiss. *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989) ("Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting."); *Rodman v. CSX Intermodal, Inc.*, 938 N.E.2d 1126, 1141-42 (Ill. App. Ct. 2010) ("It is . . . axiomatic that this question should be decided by a jury unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his

employment and make his conduct a complete departure from the business of the master")
(internal quotation marks omitted).

Plaintiffs Soulak and Banser argue that they can establish vicarious liability because the
tortious conduct was so pervasive and common, and so well-known to the defendants, that it
could reasonably be considered within the scope of employment, "where the assaults and
batteries occurred on work grounds, during work hours, were subject to Defendants' control, and
were committed repeatedly, and with the awareness and implied consent of the Defendants," and
where "management not only authorized such misconduct but also actively participated in the
misconduct." In other words, they contend that the deviation from the perpetrators' normal duties
was not "exceedingly marked and unusual" so as to be beyond the scope. *See Pyne*, 543 N.E. 2d
at 1309. This could prove to be a stretch; even if the misconduct were tolerated, it would be
difficult for the plaintiffs to prove that the alleged assaults and batteries are conduct "of the kind
[the perpetrators were] employed to perform." In particular, sexual battery is rarely within the
scope of employment. *See Doe ex rel. Doe v. Lawrence Hall Youth Services,* 966 N.E.2d 52, 61
(Ill. App. Ct. 2012); *Deloney v. Bd. of Educ.*, 666 N.E.2d 792, 797-98 (Ill. App. Ct. 1996).

Nevertheless, based upon the complaint alone, the Court cannot conclude as a matter of
law that the challenged actions were beyond the scope of employment; the Court has already
concluded that the plaintiffs plausibly allege that the defendants are *directly* liable for those torts
and on these allegations the Court cannot say that it would be unreasonable as a matter of law to
infer that conduct that has been expressly sanctioned by the employer amounts as well to conduct
within the "scope of employment" provided by that employer. That ruling makes the scope of
employment issue somewhat academic; even if the defendants' conduct is deemed to be outside
the scope of employment—thereby foreclosing derivative liability—the direct liability counts

(assault and battery) would survive. Of course, under a direct liability theory, the plaintiffs will have to prove that the defendants—not their employees—are liable for every element of the intentional torts. *See Vancura v. Katris*, 929 N.E. 2d 328, 343 (Ill. 2010) (explaining that "[i]n direct negligence, the plaintiff must prove that the employer's breach—not simply the employee's malfeasance—was a proximate cause of the plaintiff's injury."). Given the plaintiff's characterization of their assault and battery claims, *see* Mem., Dkt. # 126 at 5-6, they should keep that principle close at hand.

### C.       Timeliness

ARS next contends that the plaintiffs' amendment of their negligence "claims" (and possibly the bringing of assault and battery claims) to add facts relating to "harmful pranks" is untimely. According to ARS, the original complaint only gave notice of sexual harassment, discrimination, and retaliation, rendering allegations of conduct that does not give rise to such "claims" untimely. The argument is meritless.

Under both Illinois and federal law, an amendment relates back to an earlier pleading when it arises out of the same transaction or occurrence. *Phillips v. Ford Motor Co.*, 435 F.3d 785, 788 (7th Cir. 2006). The original complaint alleged a variety of inappropriate conduct by defendants' employees, and it is overly formalistic, and indeed, inaccurate, to state that the allegations could only give notice of claims based upon employment-related legal theories. For example, one particularly disgusting allegation in the original complaint is that supervisor Kyle Shouse "us[ed] his own feces to harass and intimidate his female co-workers by, for example, placing his feces in the women's bathroom at the station on one occasion and placing his feces on a spoon and chasing his co-workers around the station with his feces on another occasion." *See* Compl., Dkt. # 1 ¶ 38. ARS's contention that this longstanding allegation pertains

exclusively to sexual harassment, discrimination, or retaliation, rather than common-law torts, is entirely unconvincing.

The original complaint gave the defendants notice of a wide range of offensive conduct that occurred during the same time period; there is nothing in the latest complaint that pertains to a separate "transaction." Furthermore, as the Court has now stated multiple times, the plaintiffs are not limited to the labels they placed on the counts of their original complaint; indeed, they are not required to plead any legal theories explicitly. *See Jajeh*, 678 F.3d at 567. The plaintiffs clarified their allegations of injury at the Court's direction, and they obtained leave to add the new legal theories of assault and battery[7]—claims whose factual underpinnings are obvious in the original complaint and all subsequent iterations. There are no "new" claims in the Third Amended Complaint that do not relate back to the timely original complaint.

### D. Redundancy of Claims

Both defendants press the argument that Illinois does not recognize negligent supervision and negligent retention as separate torts.[8] There is at least some authority to support that assertion. *See, e.g., Helfers-Beitz v. Degelman*, 939 N.E. 2d 1087, 1092 (Ill. App. Ct. 2010) ("The tort of negligent supervision has not been distinguished from the tort of negligent retention.").[9] But, at the risk of becoming a broken record, plaintiffs are not required to set forth

---

[7] Amending a complaint simply to add new legal theories does not implicate relation back. *Joseph v. Elan Motorsports Tech. Racing Corp.*, 638 F.3d 555, 561 (7th Cir. 2011).

[8] Dismissal of the negligence counts as to plaintiff Volling does not moot this issue; those counts remain viable as to plaintiffs Banser and Soulak.

[9] The Court does not find it necessary at this time to reconcile the non-binding cases cited by the respective parties reaching different conclusions about whether negligent retention and negligent supervision are independent torts. *Compare, e.g., Swift v. BPI Energy, Inc.*, 2011 WL 4001359, at *4 (C.D. Ill. 2011), *with Soranno v. NY Life Ins. Co.*, 1999 WL 104403, at *14 (N.D. Ill. 1999) (plaintiff improperly pleaded "three torts in one" when combining negligent hiring, supervision, retention into single count). The Illinois Supreme Court has not weighed in.

*any* legal theories in their complaint, and there is no penalty for invoking the wrong one(s), or using the wrong name to identify a theory. The defendants know what conduct these counts are based upon, and the plaintiffs have supplied sufficient detail to make their claims plausible; this includes their allegations that the defendants knew that its employees harmed and posed a threat of harm to the plaintiffs and failed to adequately supervise or discipline the employees and retained them without further action, causing injury. Furthermore, it would be premature to strike either of the counts before discovery reveals the appropriate theory—and, in any case, the defendants give the Court no basis on which to select which negligence "claim" to dismiss. The plaintiffs cannot recover twice unless separate acts of negligence resulted in distinct injuries, but the pleading stage is not the time to address a potential double recovery.

### III.  Motion to Strike

Finally, Defendant Metro moves to strike various allegations from the Third Amended Complaint on the ground that they are "redundant, immaterial, impertinent, scandalous and prejudicial and cannot form the basis of a claim." *See* Fed. R. Civ. P. 12(f). Metro sets forth 14 paragraphs of the complaint (two with multiple sub-paragraphs) that it contends are inflammatory and irrelevant.

Allegations may be stricken as "scandalous" if the matter bears no possible relation to the controversy or may cause the objecting party prejudice. *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654. 664 (7th Cir. 1992). Here, the allegations that Metro wishes to purge unquestionably place it in unflattering light, but not in an *ad hominem* or irrelevant way. That is, it is the nature of the misconduct that plaintiffs allege that is offensive; in this context, the allegations are not "designed solely to disparage Defendants," as Metro contends, nor are they any more "prejudicial" than balance of allegations that Metro does not seek to strike. And Metro

does not contend that the plaintiffs lack a factual basis for the challenged allegations, which would make them subject to striking as well as sanctions under Rule 11. *See id*. at 665; *Divane v. Krull Elec. Co., Inc*., 200 F.3d 1020, 1028 (7th Cir. 1999).

Moreover, the factual allegations the defendants catalog are not gratuitous[10]—impertinent, redundant, or immaterial—even to the extent they describe misconduct not directed exclusively at the plaintiffs. A motion to strike should not be granted unless is the language in the pleading has "no possible relation" to the controversy and is clearly prejudicial; this is essentially a relevance inquiry. *See Simmons v. John F. Kennedy Med. Ctr*., 727 F. Supp. 440, 442 (N.D. Ill. 1989); 5C Charles Alan Wright *et al*., *Federal Practice and Procedure* §1382 (Motions to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action."). Using a general understanding of relevance, the challenged allegations are clearly pertinent to issues in the case, whether they can "form the basis of" a claim on their own or not. *See* Fed. R. Evid. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Scope of employment is a question in this case, as is whether the defendants authorized offensive conduct by their employees. The allegations that do not pertain directly to the plaintiffs themselves nevertheless serve to lend plausibility to their complaint. They are entitled to discovery on these and other issues that are implicated by the allegations. At the appropriate time, Metro can move to bar evidence that is unfairly prejudicial or otherwise excludable. *See, e.g*., Fed. R. Evid. 403-409.

---

[10] This is not to signify agreement with the unnecessarily prolix nature of the complaint, but its tedious length would not be meaningfully ameliorated by striking the handful of allegations that Metro cherry-picks.

Metro can rest assured that this Court will not permit "multiple potential mini-trials over non-outcome determinative facts," but its motion to strike is not the way to narrow the scope of trial before meaningful discovery has been conducted.

* * *

For the reasons set forth above, the Court partially grants the defendants' motions [98, 100] and dismisses Counts XIII(b) and XV as they apply to plaintiff Volling only. The Court otherwise denies the defendants' motions to dismiss and strike.

Date: December 3, 2013

_____
John J. Tharp, Jr.
United States District Judge